**THE FOLLOWING ORDER IS APPROVED.**

Dated: September 22, 2011

_____
**Hon. Thomas S. Utschig**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Case Number: 10-18348-7 |
| DUANE JOSEPH KOLVE and ANGELA SUSAN KOLVE, | |
| Debtors. | |
| DUANE JOSEPH KOLVE and ANGELA SUSAN KOLVE, | |
| Plaintiffs, | |
| v. | Adversary Number: 11-63 |
| INTERNAL REVENUE SERVICE, | |
| Defendant. | |

DECISION AND ORDER

This is an action to determine whether certain tax obligations are dischargeable. The plaintiffs seek judgment on the pleadings and the parties have fully briefed the matter to the Court. Based upon the submissions, the Court shall

treat the matter as one for summary judgment.[1]  Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The existence of a minor factual dispute or discrepancy does not render a summary judgment motion deficient; instead, summary judgment is to be denied only if there is a "*genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When deciding whether there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party.  Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003); see also Schuster v. Lucent Techs., Inc., 327 F.3d 569 (7th Cir. 2003).  The Court conducted a telephonic hearing on August 15, 2011.  Peter E. Grosskopf appeared on behalf of the plaintiffs, and LaQuita Taylor-Phillips appeared on behalf of the defendant.  The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

    The debtors filed this case on November 12, 2010.  They had previously filed a chapter 13 case in October of 2005.  Their plan in that case was confirmed in February of 2006.  Unfortunately, the case was subsequently dismissed in October of 2007 prior to the completion of the plan payments.  The debtors concede that they still owe individual income taxes for 2005, 2006, and 2007, as well as so-called "trust fund" taxes.  The debtors acknowledge that the trust fund

---

[1] In its briefs, the defendant requested this treatment because it supported its opposition to the plaintiffs' motion with matters outside the pleadings.

taxes and the 2007 income taxes are nondischargeable. However, they seek to discharge the income taxes for 2005 and 2006. Those claims amount to approximately $61,000.00.

Section 523(a)(1) of the bankruptcy code provides that taxes which are afforded priority status under § 507(a)(8) are nondischargeable in a chapter 7 case. As a result, a chapter 7 debtor cannot discharge tax liabilities owed in connection with a tax return that was due within three years of the bankruptcy petition. See 11 U.S.C. § 523(a)(8)(A)(i). This period is typically referred to as the "three-year lookback period." See Young v. United States, 535 U.S. 43, 46, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002). The lookback period essentially functions as a statute of limitations. Id. at 47 ("The lookback period is a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced."). The provision "encourages" the IRS to take action, whether it be to collect the debt or perfect a tax lien, and if the government sleeps on those rights, they are lost. Id.

Because the debtors initially requested extensions of time to file both their 2005 and 2006 returns, those returns were due on October 15, 2006, and October 15, 2007, respectively. The lookback period of 507(a)(8)(A)(i) is defined by the filing of "the" petition, which in this case occurred in November of 2010. See Cal. Franchise Tax Board v. Kendall (In re Jones), No. 10-60000, 2011 WL 2685582, at *2 (9th Cir. July 12, 2011) (the three-year lookback period "must be the period preceding [the debtor's] Chapter 7 petition"). Even taking into account the requested extensions, the 2005 and 2006 returns were due more than three years

before the filing date; as such, the debtors contend that the tax claims are dischargeable. The IRS disagrees. The IRS believes that the debtors' prior chapter 13 case operates to alter the calculation of the lookback period and precludes the discharge of its claims in this case.

The essential point of disagreement is the application of an unnumbered tolling provision found at the end of § 507(a)(8). This provision suspends the lookback period under certain circumstances, more particularly described as follows:

> *An otherwise applicable time period* specified in this paragraph *shall be suspended for* any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus *any time during which the stay of proceedings was in effect in a prior case under this title* or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days (emphasis added).

The parties agree that Congress added this provision to the code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 in order to statutorily codify the Supreme Court's decision in <u>Young</u> that the lookback period was subject to equitable tolling during the pendency of a debtor's previous bankruptcy. The IRS believes that under this tolling provision, the lookback period must be extended because the taxes came due during the pendency of the prior case. Specifically, the IRS contends that the lookback period for the 2005 taxes should be tolled for 459 days (for the period from October 15, 2006, until the dismissal of the case, plus 90 days), while the lookback period for the 2006 taxes should be tolled for 94 days. According to the IRS, this means that the three-year

4

lookback period begins on January 17, 2008, and this case was filed within three years of that date, rendering the taxes nondischargeable.

The debtors do not appear to take issue with these calculations per se. However, they dispute the applicability of the tolling provision itself. The debtors read the statute as authorizing tolling only if the automatic stay was in fact in effect as to a particular claim. The debtors argue that because the taxes came due after the filing of the prior case, the automatic stay did not preclude the IRS from attempting to collect the taxes. In this regard, they note that § 362(a)(8) only prohibits the commencement or continuation of a proceeding for taxes "for a taxable period ending before the date of the order for relief." This does raise an interpretive question, in that in Young the Court was clearly concerned about the effect of the prior case on the IRS's ability to pursue its claim. As the Court stated:

> The Youngs' Chapter 13 petition erected an automatic stay under § 362, which prevented the IRS from taking steps to protect its claim. When the Youngs filed a petition under Chapter 7, the three-year lookback period therefore excluded time during which their Chapter 13 petition was pending. The Youngs' 1992 tax return was due within that three-year period. Hence the lower courts properly held that the tax debt was not discharged when the Youngs were granted a discharge under Chapter 7.

535 U.S. at 50. The notion of equitable tolling contemplated by Young is clearly limited to instances in which the IRS was actually "disabled" from protecting its claim, as it was the "period of disability" which tolled the lookback period. Id. at 50-51.

Determining if the statutory provision is similarly limited depends upon the language of the statute itself. As anyone familiar with statutory interpretation likely

5

knows by heart, courts are obligated to apply statutes in accordance with their "plain meaning." See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed. 2d 391, 397-98 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there"); United States v. Ron Pair Enters., 489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290, 299 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"). The IRS offers a reading of the statute which simply tolls the lookback period for any amount of time there was "a" stay of proceedings in a prior case, whether that stay applied to preclude collection by the IRS or not.

Parsing the tolling language of § 507(a)(8) does raise some interesting linguistic issues. For example, in its briefs the IRS suggests that the lookback period should be deemed to have "begun" in January of 2008. But the lookback period is calculated backwards *from* the petition date. See 11 U.S.C. § 507(a)(8)(A)(i) (which focuses on taxes for which returns were last due "after three years before the date of the *filing of the petition"* (emphasis added)). The tolling provision applies to "an otherwise applicable time period" specified in the section, and says that such periods are "suspended" for the referenced reasons. Perhaps a better word might have been "extended," as that is the intended effect of the provision: it *extends* the lookback period on specific grounds, allowing the

6

priority and nondischargeability of tax claims to reach further and further into the past.[2]

When focusing on only those portions of the tolling provision which are relevant to this case, the statutory language essentially reads as follows: an otherwise applicable time period shall be suspended for any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of one or more confirmed plans, plus 90 days. The "otherwise applicable time period" in this context is the three-year period prior to the November 2010 petition date. That period is extended (or "suspended") for the time "during which the stay of proceedings was in effect in a prior case" or during which "collection was precluded" by the existence of a confirmed plan. As indicated, the IRS suggests that the extension of the tolling period due to the existence of a prior stay should be disconnected from any inquiry into whether the government was actually precluded from pursuing collection. By focusing on the disjunctive use of the word "or" between the relevant clauses, the IRS contends that the statute requires the conclusion that the impact on its ability

---

[2] The peculiar nature of the lookback period as a limitations period is perhaps best illustrated this way: it is a limitations period that only exists in the context of bankruptcy proceedings. See Young, 535 U.S. at 47-48 (the lookback period bars only some, not all, legal remedies, and is a "limited statute of limitations"). Under a traditional statute of limitations, parties may lose claims in their entirety if they are not exercised within a proscribed period of time from a specific event (the due date of a debt, the occurrence of an injury, etc.). But the lookback provision is only triggered if a taxpayer files bankruptcy, and is calculated in the context of that triggering event. For purposes of this case, the key is whether statutory suspension or equitable tolling might apply to *extend* the lookback period to include the due dates of the debtors' 2005 and 2006 taxes. See Jones, 2011 WL 2685582, at *3.

to collect is only relevant when a confirmed plan would otherwise interfere with its efforts.

Admittedly, the statutory tolling provision both "codified and expanded" upon the Supreme Court's ruling in Young.  See In re Montgomery, 446 B.R. 475, 480 (Bankr. D. Kan. 2011).  The clearest expression of a congressional intention to expand the rule is reflected in the addition of a uniform 90 days to any extension. But the other components of the statute still incorporate the notion inherent in the concept of *equitable* tolling:  namely, that the government was in fact impeded in some fashion by prior events.  If the government is prohibited from collecting because of a request by the debtor for a hearing, or because the debtor appealed a collection action, the lookback period is extended.  Likewise, if collection was precluded by a confirmed plan, the lookback period is extended.  But if the relevant portion of the statute is read as the IRS wishes, the government conceivably also gains an extension of the lookback period even when it suffered no "disability" in its collection activities at all.  Such a result hardly seems consistent with the typical basis for establishing a limitations period (i.e., the idea that a creditor is thus "encouraged" to take action on its claim), or with the equitable basis for tolling such periods (namely, the concern that the creditor was actively prevented from taking the actions otherwise encouraged by the limitations period).  Indeed, the debtors argue that this interpretation is itself directly contrary to the plain language of the statute.

The Ninth Circuit's recent decision in Jones appears to lend support for the debtors' position.  In that case, the Ninth Circuit affirmed decisions which

8

concluded that the tolling periods did not apply to franchise tax claims that arose after the filing of a prior chapter 13 case.  The court observed that the creditor wished to "read the statute to suspend the lookback period when a stay is in place against *any* creditor," while the debtor "reads the statute narrowly to suspend the lookback period only where a stay precluding collection of *this* debt is in place." 2011 WL 2685582, at *3.  The court found the statute ambiguous and consulted the legislative history before agreeing with the debtor's perspective. Id. at *3 ("'Because neither party's reading of [the statute] is obviously correct, the statute is ambiguous,' and we look to the legislative history in deciphering its meaning." (citation omitted)).

The statute focuses on the time "during which *the stay of proceedings* was *in effect* in a prior case under this title."  The IRS emphasizes the fact that Congress did not expressly say that the "stay of proceedings" in a prior case needed to actually preclude the IRS from collecting taxes in order for tolling to occur.  To the IRS, this omission is deliberate, and the statutory language clearly grants an extension whenever there is even a single creditor still subject to "the stay."  When reading the statute, it is certainly possible to interpret "stay of proceedings" as a collective (and generic) reference to the automatic stay, but it is also possible to read this phrase as a reference to the "stay" of proceedings - namely, proceedings which would otherwise be affected by the "applicable" limitations period.

It must be remembered that the automatic stay is one of the fundamental protections afforded to debtors under the bankruptcy code.  Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d

859 (1986). The purpose of the stay, however, is to allow the bankruptcy court to centralize disputes concerning the debtor's estate "unimpeded by uncoordinated proceedings in other arenas." In re Lehman Bros. Holdings, Inc., 433 B.R. 101, 108 (Bankr. S.D.N.Y. 2010) (quoting SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000)). Another axiom of statutory construction is that courts are to give meaning to every part (or word) in a statute. Considering the wording of § 507(a)(8), it seems that for a stay of proceedings in a prior case to have been "in effect," it must have actually *affected* certain proceedings. Which proceedings might those be? Well, the surrounding provisions all reference proceedings by the government to collect taxes, and it certainly seems logical to read this provision the same way: if the automatic stay in a prior case affected the government's ability to pursue an "uncoordinated proceeding" against property of the estate in another arena, the lookback period is extended.[3]

Linguistically, such an interpretation balances the meaning of the two components of the clause, in that it tolls the lookback period whenever there was a stay of "proceedings" (by the government) in effect in a prior case or when "collection" (by the government) was precluded by a confirmed plan. Such an interpretation is also consistent with the remainder of the provision and is in

---

[3] Put another way, the tolling provision extends "an otherwise applicable time period" for the amount of time in which the "stay of proceedings" is in effect. The "applicable time period" relates to the period after which taxes are due and could be collected; the "stay of proceedings" should also relate to the time in which taxes could have been collected.

10

keeping with the rule enunciated in Young. Equitable tolling is to be applied normally only in situations in which some "obstacle" precluded a creditor from acting. Jones, 2011 WL 2685582, at *4; see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). While Congress sought to codify the ruling in Young when it enacted the tolling provision, the only indication of a desire to *expand* upon the rule is found in the decision to tack 90 days onto the end of any period of tolling. There is no indication that Congress intended to jettison the essential concept undergirding the idea of equitable tolling. In fact, the plain language of the statute is to the contrary: Congress envisioned that the lookback period for tax claims would be extended only in situations in which the government was actually precluded from collecting.

  This conclusion does not resolve the dispute, however. It simply frames the question. Did the debtors' prior chapter 13 case actually preclude the IRS from collecting their 2005 and 2006 income taxes? If it did, statutory tolling may well be appropriate. In this regard, the debtors note that § 362(a)(8) only imposes a stay on the commencement or continuation of proceedings before the U.S. Tax Court "concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title." The debtors' 2005 and 2006 taxes did not come due until after they filed their 2005 bankruptcy case, nor did the relevant "taxable periods" end before the date of the order for relief in that case. They submit that their prior case had no impact whatsoever upon the

11

government's ability to collect those taxes, and that the lookback period should not be extended by even one day.[4]

The filing of a bankruptcy petition creates a bankruptcy estate which consists of virtually all of the property owned by the debtor at the time of filing. See 11 U.S.C. § 541(a). There are a number of distinctions between a chapter 7 bankruptcy and a chapter 13 proceeding, but significant in this context is the fact that at the outset of a chapter 13 case, assets (such as wages) that a debtor acquires *post-petition* are also included in the property of the estate. See 11 U.S.C. §§ 1306(a)(1) and (a)(2). Under § 362, creditors are prohibited from collecting post-petition debts from the bankruptcy estate. See 11 U.S.C. §§ 362(a)(3) and (a)(4). As the Ninth Circuit noted in Jones, at first blush this suggests that a tax creditor such as the IRS might be prohibited from attempting to collect post-petition taxes in a chapter 13 case, which would trigger the application of the tolling provision. 2011 WL 2685582, at *4.

However, once a chapter 13 plan is confirmed, 11 U.S.C. § 1327(b) provides that "the confirmation of a plan vests all of the property of the estate in the debtor." Considering the interplay between §§ 1306(a)(1) and 1327(b) for the first time, the Ninth Circuit ruled that at least "some" estate property revests in the debtor as of confirmation, except "those sums specifically dedicated to fulfillment of the plan." Jones, 2011 WL 2685582, at *6. As the taxing authority could have collected the debt any time after it came due, the court concluded that the lookback period was

---

[4] Of course, if the lookback period was to be extended by even one day, it would have to be extended by 91 days.

12

not statutorily suspended.  Id.  Admittedly, this perspective on the operation of § 1327(b) is not universal; as the IRS notes, there is significant dispute among courts nationwide as to how to "harmonize" these two sections of the code.  See Murphy v. O'Donnell (In re Murphy), 474 F.3d 143, 154 (4th Cir. 2007) (noting the existence of "[f]ive interpretations of the interplay between §§ 1306(a) and 1327(b)"); In re Wetzel, 381 B.R. 247, 253 (Bankr. E.D. Wis. 2008) (suggesting that there are "three basic interpretations" of the tensions between these statutes); In re Wei-Fung Chang, 438 B.R. 77, 81 (Bankr. M.D. Pa. 2010) (describing various interpretations as "estate termination," "estate preservation," "estate transformation," and "reconciliation").

The Seventh Circuit considered this statutory interaction in a different context in Black v. United States Postal Serv. (In re Heath), 115 F.3d 521 (7th Cir. 1997).  In deciding that the bankruptcy court lacked jurisdiction over a chapter 13 trustee's action to recover a post-petition fee charged by the debtor's employer, the Seventh Circuit observed:

> We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan.

Id. at 524.  While perhaps dicta, this statement appears consistent with the Ninth Circuit's perspective that after confirmation, chapter 13 debtors regain control of at least some portion of their assets.  This approach does have its detractors, of course.  In Wetzel, the court noted several limitations, including the conceptual difficulty in determining whether particular post-confirmation assets were

13

"necessary" to fund the debtor's plan. 381 B.R. at 253. Some courts consider another approach - one in which all post-confirmation earnings and property are "property of the estate" until the case is closed, dismissed or converted - to be the emerging consensus opinion. Id. (citing United States v. Harchar, 371 B.R. 254, 268 (N.D. Ohio 2007)).[5]

Authorities like Heath and Jones do not offer precise, bright-line tests. But they do recognize that after confirmation the debtor receives control of at least *some* of the assets which had formerly been property of the estate. What does this mean for the equitable tolling (or suspension) of the lookback period in this case? After the debtors' extension requests expired, the 2005 and 2006 income taxes were due October 15, 2006, and October 15, 2007, respectively. The debtors' chapter 13 plan was confirmed in February of 2006. The plan does not appear to have contained any provision which would prohibit the collection of these tax claims. The confirmation returned control over all pre-confirmation property of the estate to the debtors, and at least some post-confirmation property as well. This revesting meant that the automatic stay - which had previously acted to prevent post-petition creditors from pursuing property of the estate - was no longer "in effect" as to those assets. The stay never prohibited the IRS from pursuing a

---

[5] The holding in Heath - that an adversary proceeding to recover a post-confirmation fee withheld from a debtor's wages was properly dismissed - was specifically premised upon the conclusion that the money withheld from the debtor's post-confirmation wages was not property of the estate. In chapter 13, post-petition wages are property of the bankruptcy estate. 11 U.S.C. § 1306(a)(2). The only way for the court to have reached its ruling is because of the effect of confirmation under § 1327(b). Whether dicta or not, this Court is obliged to follow Heath in finding that at least some of the debtors' post-confirmation assets were no longer property of the estate once their plan was confirmed of February of 2006.

14

collection action against the debtors, and at the time these tax claims came due, the "stay of proceedings" was in effect (at most) as to only a portion of the debtors' post-confirmation assets. Which circles back to the crucial question. Was the IRS *actually prohibited* from collecting these tax claims at any point after the October 2006 due date of the 2005 taxes or the October 2007 due date of the 2006 taxes?

This Court agrees with Jones that the answer to this question is no. The tolling provision of § 507(a)(8) only applies to situations in which the taxing authority was actually affected by the automatic stay in the prior case. The phrase "stay of proceedings" in the statute relates to "an otherwise applicable time period" as to collection of tax claims. The congressional purpose in enacting the statute was to codify the decision in Young, which was premised upon the idea that tolling was justified because the IRS had been "disabled from protecting its claim" during the pendency of the prior case. 535 U.S. at 50-51. As the IRS did not in fact suffer under any such disability, and could instead have acted to collect the post-confirmation taxes at any time after they came due from those assets which had revested in the debtor upon confirmation under § 1327, there is no basis for tolling, whether pursuant to the statute or in equity.

Accordingly,

IT IS ORDERED that the plaintiffs' motion is granted, and the 2005 and 2006 taxes owed to the Internal Revenue Service are discharged.

###